**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **NEURAL AI LLC,** | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION 7:24-CV-00221-DC-DTG** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **NVIDIA CORPORATION,** | § | |
| *Defendant.* | § | |

**JOINT RULE 26(F) REPORT**

Pursuant to Fed. R. Civ. P. 26(f) and L.R. CV-16, Plaintiff Neural AI LLC ("Plaintiff") and Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") (collectively, the "Parties") jointly submit their report of the Rule 26(f) Conference.

**1. Are there any outstanding jurisdictional issues?**

The Parties agree that jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 is appropriate for the Asserted Patents. Venue under 28 U.S.C. § 1400(b) is appropriate for the Asserted Patents.

NVIDIA contends that the forum is inconvenient for the parties, witnesses, and evidence, and will be filing a motion to transfer under 28 U.S.C. § 1404.

**2. Are there any unserved parties? If more than 90 days have passed since the filing of the Complaint or petition, should these unserved parties be dismissed?**

The parties are unaware of any unserved parties.

1

*3.  What are the causes of action, defenses, and counterclaims pled?*

**Plaintiff's Position:** This is a patent infringement case where Neural AI alleges that NVIDIA infringes U.S. Patent Nos. 8,648,867 ("the '867 Patent"), RE49,461 ("the '461 Patent"), and RE48,438 ("the '438 Patent") (the "Asserted Patents").  As alleged in the Complaint, Neural AI has accused NVIDIA of infringing these patents by making, using, offering to sell, selling, and importing into the United States, GPUs and superchips that are designed for GPU-acceleration for artificial intelligence and neural networks. The Accused Products are more fully described in Neural AI's complaint. Neural AI further alleges that NVIDIA has and continues to indirectly infringe the Asserted Patents by actively inducing users of the Accused Products to directly infringe the Asserted Patents.  Neural AI additionally alleges that NVIDIA contributorily infringes the Asserted Patents by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  Neural AI also alleges that NVIDIA's infringement was and remains willful.

**Defendant's Position:** NVIDIA disagrees with Plaintiff's contentions, including as set forth above. In addition, NVIDIA raised numerous affirmative defenses in its Answer to Plaintiff's Amended Complaint (Dkt. No. 31), which NVIDIA incorporates here by reference. NVIDIA discloses the following legal theories and factual bases of its claims and defenses based on currently available information:

(a)    Noninfringement

NVIDIA denies that it infringes or has ever infringed any valid and enforceable claim of the Asserted Patents, either literally or under the doctrine of equivalents, whether directly,

indirectly, contributorily, by inducement, willfully, or otherwise. Additionally, with respect to Plaintiff's allegations of indirect and willful infringement, NVIDIA lacks the requisite *mens rea* at least as to any alleged pre-suit infringement.

(b)    Invalidity

NVIDIA contends that the asserted claims of the Asserted Patents are invalid for failure to satisfy the requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112. NVIDIA incorporates by reference its forthcoming invalidity contentions and all amendments thereto.

(c)    No Willfulness, Enhanced Damages, or Attorneys' Fees

Plaintiff is not entitled to enhanced damages under 35 U.S.C. § 284, at least because Plaintiff has failed to show, and cannot show, that any alleged infringement has been willful and/or knowing. Plaintiff is not entitled to an award of attorneys' fees under 35 U.S.C. § 285, at least because Plaintiff has failed to show, and cannot show, that this case is "exceptional" in Plaintiff's favor.

(d)    Statutory Limitation on Damages

Plaintiff's claims for relief are statutorily limited in whole or in part by 35 U.S.C. §§ 286 and/or 287.  Additionally, to the extent Plaintiff or any licensee of any of the Asserted Patents failed to properly mark any of their relevant products as required by 35 U.S.C. § 287 or otherwise failed to give proper notice that NVIDIA's actions allegedly infringed any asserted claim, NVIDIA is not liable to Plaintiff for the acts alleged to have been performed before NVIDIA received actual notice of alleged infringement.

(e)    License, Exhaustion, Waiver, and Estoppel

Plaintiff's claims are barred, in whole or in part, by license, exhaustion, and/or the doctrines of waiver and/or equitable estoppel.

3

(f)    Inexcusable Delay

Plaintiff is barred from enforcing the Asserted Patents due to inexcusable delay in reviving the '867 patent after it was abandoned.

(g)    Intervening Rights

Plaintiff's claims are barred by the doctrine of absolute intervening rights and the doctrine of equitable intervening rights with respect to any accused product or technology that predates the date of the revival of the '867 patent and/or the date of the reissue of the '461 and '438 patents. *See* 35 U.S.C. § 252.

(h)    Improper Reissue

The claims of the '438 and '461 patents are invalid pursuant to 35 U.S.C. § 251 because they enlarge the scope of the claims of the original patent and/or because they improperly recapture subject matter that the patentee intentionally surrendered to obtain issuance of the patents.

(i)    Government Contracts

Plaintiff's claims against NVIDIA for patent infringement are barred, in whole or in part, by 28 U.S.C. § 1498.

(j)    Ensnarement

Plaintiff is barred by the doctrine of ensnarement from contending that any asserted claim covers any product, service, or method practiced, manufactured, used, sold, or offered for sale by NVIDIA in any manner that would ensnare the prior art.

(k)    Territoriality

Plaintiff is not entitled to damages arising from any purported indirect infringement by NVIDIA that is premised on direct infringement by end-users occurring outside of the United States under 35 U.S.C. § 271.

(l)    No Standing

4

Plaintiff's claims are barred because Plaintiff lacks standing to bring this suit. Specifically, Plaintiff cannot prove that it is the rightful owner of the Asserted Patents.

(m)     Failure to State a Claim

The operative complaint fails to state a claim upon which relief may be granted.

(n)     Inconvenient Venue

As NVIDIA will explain in its forthcoming motion to transfer, venue for this action is not convenient in this District and would be more appropriate in another district. 28 U.S.C. § 1404.

(o)     Additional Defenses

Discovery in this action is ongoing, and the parties have not yet taken discovery. For this reason, NVIDIA expressly reserves the right to amend the above defenses, and to assert additional defenses, claims, or counterclaims as more facts become known.

NVIDIA's investigation is ongoing, and it reserves the right to supplement these disclosures.

4.  *Are there any agreements or stipulations that can be made about any facts in this case or any element in the cause(s) of action?*

There are no agreements or stipulations between the Parties at this time, but the Parties will continue to meet and confer on potential agreements and/or stipulations as the case progresses.

5.  *State the parties' views and proposals on all items identified in Fed. R. Civ. P. 26(f)(3).*

The Parties agree that production of highly confidential technical and financial documents will be necessary. To that end, the Parties will negotiate a Protective Order that will govern the production of such documents. The Parties anticipate that the Protective Order will be modeled after the Sample Protective Order For Patent Cases provided by the Waco Division.

**Plaintiff's Position:** Neural AI believes that ESI discovery is necessary and proper in this case. Given the extremely complicated and intricate technology at issue in the case, it is likely that

5

most, if not all, information concerning the design, development, implementation, and operation of the Accused Products is stored electronically. Additionally, email discovery is necessary because the prior patent owner had email communications with defendant regarding its technology, business and patents, over multiple years, which are highly relevant at least to willfulness and damages. These communications will be central to proof supporting willfulness and damages, as well as non-obviousness. Further, given the nature of these communications and evidence, it is likely there are internal NVIDIA ESI communications and it is unlikely there will be equivalent non-ESI sources of evidence. Without email discovery, Neural AI's ability to prove its allegations of willful infringement will be prejudiced. Neural AI proposed the parties and the Court adopt the Eastern District of Texas's ESI discovery order and protocol for this case.

**Defendant's Position:** NVIDIA does not believe that ESI or email discovery is necessary in this case. This is a patent infringement case, and the parties' ordinary discovery and document productions will be sufficient to establish the parties' claims and defenses. Further, NVIDIA does not believe there is good cause for email discovery.

First, the Standing Order Governing Patent Proceedings ("OGP") states that this Court will not require a "general search and production of email . . . absent a showing of good cause." OGP at 3. A willful infringement claim, without more, does not provide good cause to depart from this Court's default rule of no email discovery. Indeed, fact discovery has not yet opened, and NVIDIA has not yet made any document productions. Moreover, Neural AI has failed to plead the requisite knowledge of the alleged *infringement*, and only pleads knowledge of the *patents*, in connection with its allegations that NVIDIA willfully and indirectly infringed the Asserted Patents. As such, Neural AI has not had an opportunity to assess whether email production will be required, and its request plainly fails to meet the "good cause" standard.

Second, even if there is "good cause" for email productions, the OGP only contemplates "targeted email/ESI" productions, whereas the Eastern District's ESI protocol allows for up to eight custodians, and ten search terms per custodian. Neural AI has failed to explain why there is any reason why anything more than a "targeted" search for emails should apply to this proceeding, if at all. Further, Neural AI's rationale that the inventors communicated with NVIDIA merely illustrates that no email discovery is needed, and certainly no broad email discovery should be granted at this stage. Either Neural AI allegedly already has emails in its possession, or it must propose a targeted search protocol, as required by the OGP.

Third, the OGP requires that Neural AI first "propose a procedure identifying custodians and search terms it believes [NVIDIA] should search." Neural AI has failed to provide such a procedure, and as such NVIDIA cannot adequately evaluate Neural AI's request for email productions at this time. NVIDIA will consider any such procedure from Neural AI at the appropriate time (*i.e.*, once fact discovery opens).

As such, the Court should reject Neural AI's request to adopt the Eastern District's ESI protocol.

6. *What, if any, discovery has been completed? What discovery remains to be done? Have the parties considered conducting discovery in phases?*

No discovery has been completed at this time. As such, discovery is needed concerning the following topics:

a. Infringement of the Asserted Patents, including, but not limited to: technical and operational product documentation; product development documentation; and product source code.

b. Defendant's knowledge of the Asserted Patents, including, but not limited to pre-suit knowledge, and willful infringement.

c. Damages for Defendant's alleged infringement of the Asserted Patents, including, but not limited to: the value of the alleged inventions and the Accused Products' features and functionalities; any comparable licenses; any advertising and marketing

efforts by Defendant with respect the Accused Products' features and functionalities; the *Georgia-Pacific* factors for a hypothetical negotiation between the parties; and Defendant's royalty base, revenues, profits, costs, and sales of the Accused Products.

d.  The priority date, conception and reduction to practice, and diligence related to the Asserted Patents.

e.  Ownership of the Asserted Patents.

f.  Invalidity of the Asserted Patents, including, but not limited to: prior art, relevant system prior art, Plaintiff's knowledge and disclosure to the Patent Office of prior art, the prosecution of the Asserted Patents and any related patents, and any alleged secondary indicia of nonobviousness.

g.  The scope and proper construction of the asserted claims of the Asserted Patents.

h.  Any licenses or attempts by Plaintiff to license, sell, or otherwise monetize the Asserted patents.

i.  The identity of any product Plaintiff contends practices the Asserted Patents, including the first use, sale, offer for sale, or importation of such product, Plaintiff's or others' efforts to mark any such product, and the commercialization of any such product.

7.  *What, if any, discovery disputes exist?*

The Parties do not have any outstanding discovery disputes at this time and will meet and confer in good faith to attempt to resolve any disputes as needed.

8.  *Have the parties discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502?*

Yes, the Parties believe this can be addressed with the Parties' proposed protective order to be approved by the Court.

9.  *Have the parties discussed mediation?*

The Parties have not yet discussed mediation but will consider whether mediation is appropriate as the case progresses.

10. *Are there any pending motions, and if so, does either party desire a hearing?*

There are no pending motions at this time.

DATED: January 22, 2025

By: */s/ Mark D. Siegmund*
Mark D. Siegmund
Texas Bar No. 24117055
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
Bridgeview Center
7901 Fish Pond Road
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
**CHERRY JOHNSON SIEGMUND
JAMES PLLC**
8140 Walnut Hill Lane
Suite 830
Dallas, Texas 75231
wellerman@cjsjlaw.com

Christopher C. Campbell
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Telephone: (202) 626-5578
Facsimile: (202) 626-3737
ccampbell@kslaw.com

Britton F. Davis *(pro hac vice to be filed)*
Brian Eutermoser (*pro hac vice to be filed*)
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
Telephone: (720) 535-2300
Facsimile: (720) 535-2400
bfdavis@kslaw.com
beutermoser@kslaw.com

*Attorneys for Plaintiff Neural AI, LLC*

DATED: January 22, 2025

By: */s/ L. Kieran Kieckhefer*
L. Kieran Kieckhefer (*pro hac vice*)
Jaysen S. Chung (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8200
kkieckhefer@gibsondunn.com
jschung@gibsondunn.com

Brian Rosenthal
Ahmed ElDessouki (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166
(212) 351-4000
brosenthal@gibsondunn.com
aeldessouki@gibsondunn.com
Lillian J. Mao (*pro hac vice*)
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palto Alto, CA 94301-1211
(650) 849-5307
lmao@gibsondunn.com

Barry K. Shelton (Texas State Bar No. 24055029)
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
(512) 263-2165
bshelton@sheltoncoburn.com

*Attorneys for Defendant NVIDIA Corporation*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 22nd day of January 2025.

/s/ *Mark D. Siegmund*
Mark D. Siegmund