**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **NEURAL AI, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | **CASE NO. 7:24-CV-00221-ADA-DTG** |
| | § | |
| *v.* | § | |
| | § | |
| **NVIDIA CORPORATION,** | § | |
| | § | |
| *Defendant,* | § | |

**ORDER ON MARCH 19, 2026 DISCOVERY DISPUTE HEARING**

**Issue Number 1**

NVIDIA's Position**:**

Plaintiff's January 13, January 20, February 12, and February 28, 2026 FICs seek to improperly expand the case by accusing 20 software offerings that Plaintiff should have identified in its PICs. Plaintiff's charts for those offerings are based ***on public information***—including publicly available source code—that predates this case or that was available for many months before Plaintiff served its FICs. Accordingly, Plaintiff could have—and should have—identified those offerings in its PICs, or at minimum, seasonably amended its PICs upon discovery. *IGT v. Zynga, Inc.*, Case No. 21-CV-00331-ADA, 2022 WL 606719, at *2–3 (W.D. Tex. Mar. 1, 2022) ("[P]laintiffs should ***exhaust publicly available information*** in providing ***preliminary*** infringement contentions." (emphasis added)). Plaintiff did neither.

The Court's December 2, 2025 Order allowing Plaintiff to serve FICs based on source code produced in discovery did not excuse Plaintiff's lack of diligence to that point. To the contrary, Plaintiff was required to diligently identify and accuse products in its PICs. *See*

1

*Keranos, LLC v. Silicon Storage Tech., Inc.*, Case No. 2:13-cv-17, 2013 WL 5763728, at *4 (E.D. Tex. Aug. 5, 2013) ("[T]he burden is on Plaintiff, not Defendants, to search for and identify infringing products to the extent possible based on publicly [sic] available information."), *vacated in part on other grounds by 797* F.3d 1025 (Fed. Cir. 2015).  Given that the 20 newly accused offerings—and their public source code—predate Plaintiff's PICs and the ***filing of the complaint***, Plaintiff failed to exercise sufficient diligence.

Plaintiff's lack of diligence significantly prejudices NVIDIA. Plaintiff has now served 107 charts, 56 of which are associated with the 20 public software offerings at-issue here. Absent Court intervention, NVIDIA would be forced to litigate dozens of new accusations on an expedited basis, long after claim construction and final invalidity contentions.

NVIDIA's Requested Relief:  NVIDIA respectfully requests that that the Court enter a Protective Order pursuant to Rule 26(c) barring Plaintiff from continuing to seek discovery regarding ***Isaac Lab, Monai, Merlin, Modulus, Morpheus, Riva, Triton, RAPIDS, Isaac, Holoscan, PyTorch, cuBLAS, cuSPARSE Clara Parabricks, Maxine, Metropolis, cuFFT, cuSOLVER, VSS,*** and ***Aerial***, and precluding Plaintiff from including them in its expert reports.

Neural AI's Position:

NVIDIA is trying to use this dispute to keep out software evidencing infringement. It circulated this chart only after receiving NAI's chart addressing NVIDIA's refusal to provide discovery on software charted **after** January 13. NVIDIA now attempts to expand the dispute to software charted **on January 13 itself**—an issue NVIDIA never raised during the parties' meet-and-confer. *See* Ex. D at 1.

Importantly, the Court has already ordered NVIDIA to produce the very software it now seeks to shield from the case. *See* Dkt. 103.

NVIDIA's premise—that these charts rest solely on "public" evidence and therefore the

software should have been accused earlier—is wrong. NAI's "public" charts cross-cite and incorporate non-public code in other charts. That is because the purportedly "public" libraries depend on lower-level proprietary libraries, including TensorRT, cuDNN, and the CUDA Runtime/Driver. Public code at most shows **calls** into libraries; it does not reveal what those calls do because the operative functionality resides in the highly confidential code. NAI's "public" charts therefore cross-cite non-public code charts, and NAI was not required to redundantly re-cite the same code.

Further, NVIDIA did not complete production of key libraries such as the CUDA Runtime/Driver implementing code until **December 5, 2025**, months after representing to the Court that they had been produced. Ex. B. Other libraries were produced even later, such as TensorRT produced on **February 6, 2026**. Without the late produced, lower-level code, NAI could not reasonably assess infringement as to the higher-level libraries.

Separately, NVIDIA's premise that code for these libraries is completely "public" is false. Even where portions of the codebase are public, the **relevant** functionality is implemented through **non-public backend code** that NVIDIA withheld. NAI repeatedly followed up seeking backend code for so-called "public" libraries, and NVIDIA ultimately produced portions *only after November 30, 2025*. Ex. E.

This problem is compounded by the extraordinary scope and complexity of NVIDIA's software stack. NAI analyzed over 100 code libraries comprising more than 2.5 million files, spread across layered platforms. This is a time-consuming process, and NAI's reviewers have already billed over *$1 million* to code review alone.

Moreover, although the at-issue charts do not repeat confidential source-code citations line-by-line, the infringement theories asserted are grounded in NVIDIA's non-public code.

3

Infringement contentions are meant to provide notice, not prove the case, and a plaintiff is not required to cite confidential code as a prerequisite, particularly where the defendant delayed production. *Am. Video v. Elec. Arts*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005); *Seven Networks v. Motorola*, 2022 WL 3448642, at *3 (N.D. Tex. Aug. 16, 2022) (stating infringement contentions **do not** require "source code or an explanation of it").

Finally, to the extent the Court concludes amendment is required, NAI is prepared to move for leave to amend and can show good cause. NAI respectfully requests leave to do so.

Neural AI's Requested Relief: NAI respectfully requests that the Court (1) overrule NVIDIA's objections and confirm that NAI's January 13 infringement contentions are proper and sufficient, including where NAI's "public" charts cross-cite and incorporate corresponding non-public code charts; and (2) to the extent the Court concludes additional confidential source-code citations are required, grant NAI leave to amend upon a showing of good cause and set a reasonable schedule for amended charts and any limited follow-on discovery to cure any arguable prejudice.

## Issue Number 2:

NVIDIA's Position:

Even if the Court allows Plaintiff to add new offerings absent diligence, Plaintiff's January 20 and February 12 FICs directed to Metropolis, cuSOLVER, cuFFT, Maxine, and Clara Parabricks are independently improper because they were served in violation of the Court's scheduling order.

In January, Plaintiff moved for an extension to serve its FICs. The Court denied that request and set the January 13 FIC deadline. Dkts. 132, 146. Based on the parties' stipulation, the Court permitted a limited exception that **only** allowed Plaintiff until January 20 to address

4

source code that NVIDIA produced between December 1 and December 20.  Dkts. 136, 146. The Court further held that any "[f]urther amendment" to Plaintiff's FICs "will require good cause." *Id.*

Nevertheless, on January 20 and February 12, Plaintiff served FICs—directed to Metropolis, cuSOLVER, cuFFT, Maxine, and Clara Parabricks—without seeking leave or providing good cause.  NVIDIA did not produce code for Metropolis or cuSOLVER in December.  And although NVIDIA did produce code for cuFFT, Maxine, and Clara Parabricks, Plaintiff did not chart that code in its contentions.  Instead, Plaintiff relied only on code that it independently found in the public domain. Accordingly, the Parties' stipulation and Court's order allowing the charting of code NVIDIA produced between December 1 and December 20 did not give Plaintiff permission to serve those additional FICs.

NVIDIA's Requested Relief: NVIDIA respectfully requests that the Court enter a Protective Order pursuant to Rule 26(c) barring Plaintiff from continuing to seek discovery regarding **Metropolis**, **cuSOLVER**, **cuFFT**, **Maxine**, and **Clara Parabricks** and preventing Plaintiff from including them in its expert reports.

Neural AI's Position:

NAI incorporates each argument above, which applies with equal force here.

NVIDIA misreads the Court's order. The Order expressly permits identification of software limitations within 30 days after relevant code is produced. Dkt. 132. NAI charted the at-issue libraries within 30 days of NVIDIA's post-November 30 productions, as permitted.

NVIDIA's limiting the Order to code produced between December 1 and December 20 is nonsensical. First, that limitation appears nowhere in the Order. *See* Dkt. 132. Further, NVIDIA's theory would permit NVIDIA to withhold code until after December 20, dump it on NAI, and

then argue NAI must seek leave to amend each time. And that perverse incentive is exactly what occurred here. NVIDIA continued producing relevant code well into 2026, including DeepStream (January 13), Drive (January 13), cuQuantum (January 28), Aerial (January 28), and TensorRT (February 6). Ex. B.

NVIDIA is also wrong on the facts. For example, it claims it "did not produce" code for Metropolis in December.  But NVIDIA's counsel admitted that's false. *See* Ex. F at 2 (A. ElDessouki email) ("NVIDIA made the source code for VSS available … on December 20, 2025, and for DeepStream on January 8, 2026… VSS and DeepStream are within the Metropolis umbrella, and [this] completes the Metropolis production.").

To the extent the Court concludes amendment is required, NAI is prepared to promptly move for leave based on good cause.

Neural AI's Requested Relief: NAI respectfully requests that the Court (1) overrule NVIDIA's objections that NAI's post–January 13 infringement contentions are "improper" under Dkts. 132 and 146; (2) confirm that Dkt. 132 permits NAI to identify software limitations within 30 days of NVIDIA's production of the relevant source code, including NVIDIA's post-November 30 rolling productions extending into 2026; and (3) to the extent the Court concludes any amendment is required, grant NAI leave to amend upon a showing of good cause and set a reasonable schedule for serving amended charts and corresponding discovery to cure any arguable prejudice.

**Issue Number 3**

NVIDIA's Position:

Plaintiff's hardware-based contentions regarding Jetson, Vera and Rubin are improper for two reasons.

First, as with issue number 1 above, Plaintiff did not accuse the Jetson hardware architecture in its PICs even though it was released more than a decade before this case was filed. In fact, the inventors named on the asserted patents (who are also employees and/or consultants of Plaintiff) worked with Jetson as early as 2017. Relatedly, the Vera and Rubin families were announced as early as March 19, 2025—as shown by documents *Plaintiff* produced—but Plaintiff never "seasonably amended" its PICs to accuse them as required under the OGP. In short, Plaintiff could—and should—have identified Jetson, Vera, and Rubin well before the FIC deadline.

Second, Plaintiff failed to provide the accompanying infringement charts that are required by the OGP. Beyond violating the Court's OGP, the lack of charts is prejudicial to NVIDIA because it leaves NVIDIA without notice of the purported theories against which it has to defend itself.

NVIDIA's Requested Relief: NVIDIA respectfully requests that the Court strike references to the uncharted *Jetson*, *Vera*, and *Rubin* hardware platforms from Plaintiff's Final Infringement Contention cover pleading, and enter a Protective Order pursuant to Rule 26(c) barring Plaintiff from continuing to seek discovery with respect to those platforms and preventing Plaintiff from including them in its expert reports.

Neural AI's Position:

NVIDIA's objection mischaracterizes the technology and procedural history.

First, Jetson is not a distinct GPU architecture. It's a system-on-chip ("SoC") platform that incorporates accused architectures, including, for example, Maxwell, Pascal, and Volta (*see* Ex. H, I) which are already in this case. It thus plainly falls within the scope of the asserted infringement theories.

It was only during discovery that NAI learned NVIDIA—and certain third parties responding to subpoenas—were withholding materials relating to Jetson. Exs. B, C.  To short-circuit the dispute, NAI is preparing Jetson-specific claim charts and intends to seek leave to amend based on good cause.

Second, NVIDIA only recently announced Vera-Rubin chips were under production, which NAI discovered on January 6, 2026. Ex. G. NAI is likewise preparing claim charts addressing Vera-Rubin. Thus, NAI was diligent in seeking leave (to the extent the products are even considered "new").

Neural AI's Requested Relief:  NAI respectfully requests that the Court (1) overrule NVIDIA's objections to discovery concerning Jetson and Vera–Rubin; (2) confirm that Jetson systems—incorporating the accused Maxwell, Pascal, and Volta GPU architectures—fall within the scope of this case and that NVIDIA must produce discovery concerning Jetson on the same terms as other accused products; and (3) grant NAI leave, upon a showing of good cause, to amend its infringement contentions to add Jetson- and Vera–Rubin-specific claim charts.

**The Court's Orders:**

After reviewing the parties' positions as described in the dispute charts submitted by the parties on March 12, 2026, and the arguments of counsel presented at the March 19, 2026 hearing, the Court **ORDERS** as follows:

Issue No. 1: The Court finds that Plaintiff provided notice that the challenged software offerings were at issue.  NVIDIA's motion is **DENIED**.

Issue No. 2: Given the complex nature of the code, the patents and the claim charts, the Court relies on Plaintiff's representations that the contents of the challenged charts identified in Issue No. 2 reflect productions made in December 2025 or later.  NVIDIA's motion is **DENIED**.

The Court further **ORDERS** that the period provided pursuant to its prior order (Dkt. 132) for amendment of infringement contentions based on later produced source code has closed. Any further amendment to infringement contentions shall require leave of Court and a showing of good cause.

Issue No. 3:  The Court finds that Vera Rubin is not in the case and **GRANTS** NVIDIA's motion to strike references to the uncharted Vera Rubin hardware platform from Plaintiff's Final Infringement Contention cover pleading.  To the extent Plaintiff intends to include Vera Rubin in the case, Plaintiff must seek leave to amend based on good cause to add Vera Rubin to the case.

The Court **GRANTS-IN-PART** NVIDIA's motion with respect to Jetson. The Court finds that Jetson is accused to the extent a final infringement contention chart that Plaintiff already served for one of the eight GPU architectures applies to the Jetson functionality or operation. The Court further **ORDERS** that NVIDIA produce documents and information sufficient to show how Jetson operates and uses the GPU hardware previously accused of infringement. To the extent Plaintiff intends to accuse unique features of Jetson beyond the previously charted eight GPU architectures, Plaintiff must seek leave to amend based on good cause to add those allegations to the case.

The parties are **ORDERED** to meet and confer regarding whether any modification to the case schedule is necessary in light of these rulings. Any requested modifications shall be presented to the Court after the parties have conferred and attempted to reach agreement.

**SIGNED** this 27th day of March, 2026.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

9